Robin SWITZENBAUM, et al., Plaintiffs,

v.

ORBITAL SCIENCES CORPORATION, David W. Thompson, and Jeffrey V. Pirone, Defendants.

Civ.Act.Nos. 99–197–A, 99–279–A, 99–368–A, 99–230–A, 99–284–A, 99–384–A, 99–231–A, 99–300–A, 99–414–A, 99–233–A, 99–309–A, 99–524–A, 99–265–A, 99–310–A, 99–533–A, 99–266–A, 99–347–A, 99–385–A.

United States District Court, E.D. Virginia, Alexandria Division.

May 21, 1999.

Michael Nachmanoff, Cohen, Gettings, Arlington, Virginia, Jonathan M. Plasse, Goodkind, Labaton, New York City, Peter L. Sissman, Arlington, VA, Paul T. Gallagher, Cohen, Milstein, et al., Washington, DC, for plaintiff.

Stephen M. Sacks, Arnold and Porter, Washington, DC, for defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

Eighteen putative class action securities fraud cases have come before the Court on motions to consolidate, to appoint a lead plaintiff, and to select lead counsel.[1]

### Facts

The Defendant Orbital Sciences Corporation ("Orbital") is a Delaware corporation that maintains its principal executive offices in Dulles, Virginia. Orbital designs, manufactures, operates, and markets products and services for the satellite and aerospace industries, and shares of its stock have been actively traded on the NASDAQ System and the New York Stock Exchange. The Defendant David W. Thompson was Orbital's President, Chief Executive Officer, and Chairman of the Board at all times relevant to this case, while the Defendant Jeffrey V. Pirone was its Executive Vice–President and Chief Financial Officer.

The Complaints allege that the Defendants materially exaggerated Orbital's business success for the first quarter of its 1998 fiscal year and thereby inflated the price of its stock until a more accurate and less optimistic picture of its financial condition for that time frame eventually came to light. The Plaintiffs[2] allegedly suffered damages because they purchased Orbital securities at prices that were inflated in this way, and they have filed these putative class actions in order to obtain relief under various provisions of the federal securities laws.

Consistent with the framework envisioned by the Private Securities Litigation Reform Act, *see* Pub.L. No. 104–67, 109 Stat. 737 (1995) (codified in pertinent part at 15 U.S.C. § 78u–4), the Plaintiffs now ask the Court: (1) to consolidate these actions for all purposes; (2) to appoint the "Orbital Plaintiff Group" (the "Group") to serve as the Lead Plaintiff for the Purported Class; (3) to approve the Group's selection of Berger & Montague, P.C., and Schiffrin & Barroway, L.L.P. as Co–Lead Counsel for the Purported Class; (4) to approve the Group's selection of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. and Lowey Dannenberg Bemporad & Selinger, P.C. to serve as Executive Committee Counsel; and (5) to approve the Group's selection of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as Liaison Counsel.

Consolidation is unopposed, but the New York City Pension Funds ("NYCPF")—a group of institutional investors that also claim to have purchased Orbital securities at inflated prices—have submitted a competing candidacy to serve as the Lead Plaintiff, with their own proposed choice of Goodkind Labaton Rudoff & Sucharow L.L.P. to serve as Lead Counsel. The Court will consider each of these matters in turn.

### I. Consolidation of the Actions

The Court will first examine the propriety of consolidating these actions into a single proceeding.

#### a. Standard of Review

■ Rule 42(a) of the Federal Rules of Civil Procedure permits the consolidation of

---

1. The Securities and Exchange Commission has moved for leave to file a memorandum as *amicus curiae*. The Court will grant that motion as a matter of course in light of the Commission's useful familiarity with the legal issues at hand.

2. The Plaintiffs are Robin Switzenbaum (Civil Action No. 99–197–A), Stephen Blank (Civil Action No. 99–230–A), Jacob Freiman (Civil Action No. 99–231–A), Kulwant Sandhu (Civil Action No. 99–233–A), David Bromley (Civil Action No. 99–265–A), David Benjamin (Civil Action No. 99–266–A), Charles Fiermonte (Civil Action No. 99–279–A), Paul Krieger (Civil Action No. 99–284–A), Edward McCloskey (Civil Action No. 99–300–A), Darren Spademan (Civil Action No. 99–309–A), Alexander Urman (Civil Action No. 99–310–A), Rebecca Neis (Civil Action No. 99–347–A), Michael Cafferty (Civil Action No. 99–368–A), Terence Byrne (Civil Action No. 99–384–A), Barbara Eisenberg (Civil Action No. 99–414–A), Richard Lam (Civil Action No. 99–524–A), Yakov Prager (Civil Action No. 99–533–A), and Bert Larson (Civil Action No. 99–385–A).

actions that pose common questions of law or fact. Judicial economy generally favors consolidation, *see Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 n. 85 (2d Cir.1990), but the Court must conduct a careful inquiry in this regard that balances the prejudice and confusion that consolidation might entail against the waste of resources, the burden on the parties, and the risk of inconsistent judgments that separate proceedings could engender. *See Arnold v. Eastern Air Lines, Inc.,* 681 F.2d 186, 193 (4th Cir.1982).

### b. Analysis

■ With these factors in mind, consolidation is clearly appropriate for the litigation at hand. The Plaintiffs have alleged that the Defendants exaggerated Orbital's financial success for the first quarter of its 1998 fiscal year, inflated the price of the company's stock in the process, and thereby caused harm to those who purchased Orbital securities before more pessimistic financial results later came to light and caused the price of the stock to fall. All of the Complaints seek to hold Orbital, Thompson, and Pirone responsible for the consequences, and identically ask for relief under Section 10 of the Securities Exchange Act of 1934 ("the '34 Act"), Rule 10b–5 as promulgated thereunder ("10b–5"), and Section 20(a) of the '34 Act as well.

Having complained of the same allegedly wrongful conduct, the 10b–5 claims alone will raise the same set of questions in each case, such as (1) whether the Defendants made a false or misleading statement of material fact, or failed to disclose a material fact under circumstances giving rise to a duty to disclose; (2) whether they did so with scienter; (3) whether the Plaintiffs justifiably relied on these material misstatements or omissions; and (4) whether the Defendants' acts or omissions and the Plaintiffs' reliance thereon proximately caused them harm. *See Cooke v. Manufactured Homes, Inc.,* 998 F.2d 1256, 1260 n. 61 (4th Cir.1993) (citing 15 U.S.C. § 78j; 17 C.F.R. § 240.10b–5). Even if the Plaintiffs are not identically situated in every respect, they share a mutual interest in having the Court resolve questions about whether the Defendants made any misstate-

ments or omissions, whether they did so with scienter, and whether the price of Orbital's common stock became artificially inflated as a result. *See Ganesh, L.L.C. v. Computer Learning Centers, Inc.,* 183 F.R.D. 487, 489 n. 90 (E.D.Va.1998). The efficiency of resolving these and other questions at once in a single proceeding is beyond serious debate. *See Werner v. Satterlee, Stephens, Burke & Burke,* 797 F.Supp. 1196, 1211 (S.D.N.Y. 1992) (consolidating 10b–5 claims that posed numerous common questions of law and fact, despite variations in the identity of the parties and in some of the allegations).

Proper regard for fairness does not require a different result. All of the Plaintiffs appear to share a similar interest in recovering from the Defendants, and the fact that the amount of their damages may differ does not pose a disabling risk of prejudice or confusion because separate claims for payment could be processed if liability were found. *Cf. Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 566 (2d Cir.1968) (observing that the need for damages to be calculated individually does not, without more, preclude classwide adjudication). The Defendants similarly appear to risk little prejudice from proceeding in a consolidated action because none of the individual lawsuits has progressed to the point at which consolidation would create undue delays. *See Werner,* 797 F.Supp. at 1212 (concluding that consolidation would not impose an undue delay even though the lawsuits at issue were at different stages). Absent any other circumstances that speak in favor of conducting eighteen mini-trials on the same or similar issues of law and fact, the Court will grant the Orbital Plaintiff Group's Motions to Consolidate These Actions.

### II. Appointment of Lead Plaintiff

The Court will now decide who should serve as the Lead Plaintiff to direct the case through further proceedings.

### a. Standard of Review

■ The Private Securities Litigation Reform Act ("PSLRA") requires a person who initiates a putative class action securities fraud case to publish notice of the complaint

within twenty days of filing his lawsuit. *See* Pub.L. No. 104–67, 109 Stat. 737 (1995) (codified in pertinent part at 15 U.S.C. § 78u–4(a)(3)(A)(i)).[3] Within ninety days after publication of the requisite notice, the Court must then determine which of the potential plaintiffs can most adequately represent the putative class, and appoint that "person or group of persons" to serve as the Lead Plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(i) & (iii). The purpose of these provisions is to ensure that the prosecution of the action is coordinated only by those who have a serious and legitimate interest in doing so on behalf of the putative class. *See In re Baan Co. Securities Litig.*, 186 F.R.D. 214, 215–216 (D.D.C. 1999) (citing Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 104–369, at 32–35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 730, 731–34).

The PSLRA requires the Court to presume that the appropriate Lead Plaintiff is the "person or group of persons" that (1) initiated the lawsuit or moved for appointment after notice of the complaint; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Although the presumption is rebuttable, a challenge requires proof that the proposed Lead Plaintiff will not fairly and adequately protect the interests of the class, or that he is subject to unique defenses that render him incapable of providing adequate representation. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

*b. Analysis*

■ The Orbital Plaintiff Group consists of seven individual investors—Paul Copansky, Elizabeth Meyer, Joyce Askew, Wilbur Fletcher, Eugene Basch, Martin Golinsky, and Daniel Grieff (Motion of the Orbital Plaintiffs Group for Appointment of Lead Plaintiffs)[4]—who filed a timely motion for collective appointment to act as the Lead Plaintiff in this case. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). Although the Group has subsequently tried to count an additional potential plaintiff among its ranks, the bootstrapped plaintiff never filed a complaint himself or moved for appointment within the time that the PSLRA requires of those who hope to become the Lead Plaintiff.[5] *See id.* & 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). As a result, the Orbital Plaintiff Group's candidacy depends solely on the qualifications of its original seven members. These seven members appear to have suffered recoverable losses in the approximate amount of $857,000.[6] (Supplemental Declaration of Arthur Stock in Support of the Orbital Plaintiff

---

**3.** Subsequent citations are to the United States Code.

**4.** For illustrative purposes, the Court will refer to the pleadings in Civil Action No. 99–197–A, although equivalent pleadings can be found in each of the other seventeen actions.

**5.** On May 5, 1999, the Group filed a brief in opposition to the NYCPF's motion for appointment as the Lead Plaintiff, and it ambiguously purported to replace or to supplement four of its members, Joyce Askew, Wilbur Fletcher, Eugene Basch, and Martin Golinsky, with a new proposed lead plaintiff, Andrew O'Keefe. (Memorandum of Law in Opposition to the New York City Pension Fund's Motion for Appointment as Lead Plaintiffs at 3.)

Nevertheless, the PSLRA requires those who seek to become the Lead Plaintiff to have either (1) filed a complaint; or (2) moved for appointment within sixty days after publication of notice of the case. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). O'Keefe chose not to file a complaint himself. He could have moved for appointment, but because notice of the first-filed Complaint was published on February 18, 1999, the deadline for such a motion expired on April 19, 1999. Having failed to name O'Keefe as one of its leaders until May 5, 1999, the Group's attempt to count him among its leadership ranks is untimely.

**6.** The Court must measure the Orbital Plaintiff Group's financial interest in this case by tallying the allegedly recoverable losses that its seven members have sustained. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). Contrary to what the Group has argued, the financial interest of other class members whom it purports to represent is immaterial. As the PSLRA makes clear and as the Securities and Exchange Commission has observed, it is only the seven designates, and not their alleged constituents, who are the actual candidates at issue because they alone have filed a timely motion to manage the case. (Memorandum of the Securities and Exchange Commission as *Amicus Curiae* at 18–19 (citing *In re Baan*, 186 F.R.D. 214, at 217–218.))

Group's Motion for Appointment of Lead Plaintiffs at Ex. A.)

The NYCPF consists of five New York City retirement funds that have also filed a timely motion for collective appointment to act as the Lead Plaintiff in this litigation. Its members include the New York City Employees' Retirement System ("NY-CERS"), the New York City Fire Department Pension Fund ("FDPF"), the New York City Board of Education Retirement System ("BERS"), the New York City Police Superior Officers' Variable Supplements Fund ("PSOVSF"), and the New York City Firefighters' Variable Supplements Fund ("FFVSF"). Having invested in Orbital securities during the period at issue, it allegedly suffered recoverable losses in the approximate amount of $715,592. (Memorandum of Law of the New York City Pension Funds in Support of Motion for Appointment as Lead Plaintiff at 4.)

If damages alone were the only relevant consideration, then the seven members of the Orbital Plaintiff Group, whose approximate losses total $857,000, might prevail over the five members of the NYCPF, whose approximate losses total $715,592, as the presumptive Lead Plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). But the analysis does not end there. Even if a candidate has the largest financial interest in a case, it is not the presumptive Lead Plaintiff unless it "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Although the inquiry is not as searching as the one triggered by a motion for class certification, see Chill v. Green Tree, 181 F.R.D. 398, 407 n. 8 (D.Minn.1998); Lax v. First Merchants Acceptance Corp., 1997 WL 461036, at *6 (N.D.Ill. Aug. 11, 1997), the candidate must make at least a preliminary showing that it has claims which are typical of those of the putative class and that it has the capacity to provide adequate representation for others, see Fed.R.Civ.P. 23(a).

Despite these requirements, the Orbital Plaintiff Group has chosen not to provide meaningful information about the identity of its seven members other than to offer their names, a summary of the transactions by which they purchased Orbital securities, and the "simple mathematical" conclusion that they have the largest financial interest in the case. (Reply Memorandum of Law in Further Support of the Orbital Plaintiff Group's Motion for Appointment as Lead Plaintiffs at 5.) Although their claims appear to be typical of those of the putative class because they purchased Orbital securities during the proposed Class Period at allegedly inflated prices, little is known about the ties that the seven members have to each other or to the putative class. Having failed to volunteer anything more than conclusory assertions about its competence to manage this case, the Group has put its adequacy of representation in doubt.

These gaps in the Record ordinarily might require additional briefing, see, e.g., In re Baan, 186 F.R.D. at 217–19, but other facts in this case conclusively demonstrate that the Orbital Plaintiff Group is not an adequate representative for the putative class. In its original motion for appointment as the Lead Plaintiff, the Group represented to the Court that it consisted of seven members: Paul Copansky, Elizabeth Meyer, Joyce Askew, Wilbur Fletcher, Eugene Basch, Martin Golinsky, and Daniel Grieff. In so doing, the Group created the appearance that it consisted of a unified set of seven investors who could manage the case and adequately represent the interests of every putative class member.

Even so, the Group later attempted to bootstrap members in and out of its leadership by (1) purporting to add Andrew O'Keefe as one of the proposed Lead Plaintiffs, even though his name had never been mentioned before and he was time-barred from seeking such an appointment (Memorandum of Law in Opposition to the New York City Pension Fund's Motion for Appointment as Lead Plaintiffs at 3); (2) appearing to cut Joyce Askew, Wilbur Fletcher, Eugene Basch, and Martin Golinsky out of its leadership altogether by inviting the Court to select a reconstituted group of managers instead (Memorandum of Law in Opposition to the New York City Pension Fund's Motion for Appointment as Lead Plaintiffs at 3 n. 2); and (3) alternatively describing itself

to include approximately 200 putative class members, as if to suggest that all of them could manage the case together despite the obvious logistical impossibility of doing so (Supplemental Declaration of Arthur Stock at Ex. A).

In short, the Orbital Plaintiff Group is unable to agree on who its members are, some of its proposed members are ineligible to act as the Lead Plaintiff in any event, one formulation of the Group would include more people than could possibly manage the case, and the Group has never been forthcoming about any of these conflicts at all. With this degree of disorder among its leadership ranks, it cannot credibly claim to offer adequate representation to others. Under these circumstances, the Orbital Plaintiff Group is not entitled to a presumptive designation as the Lead Plaintiff, and even if it were, its inability to manage itself so far would amply rebut the presumption that it could fairly and adequately protect others.

The NYCPF is the candidate with the next largest financial interest in this case. As a group of five affiliated institutional investors, the NYCPF has claims that are typical of those of the putative class because it (1) purchased Orbital securities during the Class Period; (2) at prices that the Defendants allegedly inflated with their false and misleading statements about the company's financial success; (3) so as to suffer damages once a more accurate picture of the company's financial condition came to light and caused the stock price to fall. The NYCPF also appears best capable of providing adequate representation, having made a preliminary showing (1) that its five members have established mechanisms for making sound

collective decisions together; and (2) that the New York City Office of Corporation Counsel can monitor its actions and those of its proposed Lead Counsel. (Affidavit of Sue Ellen Dodell.)

Consistent with these facts, other courts have specifically recognized the NYCPF's ability to manage class action securities fraud cases. *See In re Cendant Corp. Litig.*, 182 F.R.D. 144, 147 n.48 (D.N.J.1998). Having timely moved for appointment, given its financial interest in this case, and in light of its prima facie satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedure, the NYCPF is entitled to selection as the Lead Plaintiff in this case.[7]

### III.   Selection of Lead Counsel

The Court will now turn to the choice of Lead Counsel.

#### a.   Standard of Review

The PSLRA provides the lead plaintiff in a putative class action securities fraud case with the opportunity to select and retain counsel "subject to the approval of the [C]ourt." 15 U.S.C. § 78u–4(a)(3)(B)(v). The decision carries considerable importance because "[l]ead counsel must represent not only the interests of a lead plaintiff, but all members of the putative class." *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 151 (D.N.J.1998). As such, lead counsel should have specific experience in securities litigation along with "the highest professional talent, accompanied by a similarly high degree of integrity." *Id.* Stated simply, the goal is to find competent and experienced counsel to represent the putative class.

---

**7.** Nothing in this conclusion should be taken to mean that institutional investors are always superior to individual investors who band together as proposed Lead Plaintiffs.

Although Congress expressed a preference for selecting institutional investors over individuals claimants as lead plaintiffs, *see* Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 104–369, at 32–35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731–34, the PSLRA appears to permit multiple "members" of a putative class to act as lead plaintiffs in a "group", *see* 15 U.S.C. § 78–u(a)(3)(B)(i) & (iii). Courts are split as to whether affiliated institutions (such as the NYCPF) are presumptively

superior to unrelated individuals (such as the Orbital Plaintiff Group) in this regard. *Compare In re Baan*, at 215–16, *with In re Donnkenny Inc. Securities Litig.*, 171 F.R.D. 156, 157 n.58 (S.D.N.Y.1997).

The Court need not resolve this question, having concluded that the individual investors in this case have uniquely demonstrated their inadequacy to represent the putative class. *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997) (affirming the decertification of a settlement class because of clear problems with the settlement class at issue, even though settlement classes are theoretically appropriate in some cases).

### b. Analysis

■ The NYCPF asks that the Court approve Goodkind Labaton Rudoff & Sucharow L.L.P. (the "Goodkind firm") as Lead Counsel. None of the parties has raised specific objections to the Goodkind firm, and it has no apparent conflicts of interest that might prejudice the putative class. ` Having reviewed the relevant credentials, the Court concludes (1) that the firm has extensive experience in undertaking securities fraud cases; and (2) that it enjoys considerable professional talent with which to manage complex litigation. *See Martindale–Hubbell Lawyer Locator: Firm Profile for Goodkind Labaton* (visited May 19, 1999) <http://lawyers. martindale.com/marhub/form/firm.html>; *Goodkind Labaton Rudoff & Sucharow L.L.P.—Attorneys at Law* (visited May 19, 1999) <http://www.glrs.com/>. In light of these considerations, along with a specific proffer that the firm's contingent fees are below what courts typically award (Memorandum of Law of the New York City Pension Funds in Opposition to the Copansky Group's Motion for Appointment of Lead Plaintiff at 5), the Court will designate the Goodkind firm as Lead Counsel.

### Conclusion

For the foregoing reasons, the Court will (1) GRANT the Securities and Exchange Commission's Motion for Leave to File a Memorandum as *Amicus Curiae;* (2) GRANT the Orbital Plaintiff Group's Motions to Consolidate These Actions; (3) DENY the Orbital Plaintiff Group's Motions for Appointment of Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Co–Lead Counsel; and (4) GRANT the New York City Pension Funds' Motions for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel. The Court reserves continuing jurisdiction to revisit these issues, either on motion or sua sponte, as the circumstances may dictate. *See, e.g., Metro Servs., Inc. v. Wiggins,* 158 F.3d 162, 165 (2d Cir.1998).