Nancy WENDERHOLD, Plaintiff,

v.

CYLINK CORPORATION,
et al., Defendants.

Harold Lerner, Plaintiff,

v.

Cylink Corporation, Defendant.

Chad B. Poling, Plaintiff,

v.

Cylink Corporation, Defendant.

Max Silberman, Plaintiff,

v.

Cylink Corporation, Defendant.

Harry Vassilakos, Plaintiff,

v.

Cylink Corporation, Defendant.

Hans. L. Von Schweinitz, Plaintiff,

v.

Cylink Corporation, Defendant.

Lawrence J. Plisskin, Plaintiff,

v.

Cylink Corporation, Defendant.

Nos. C 98–4292 VRW, C 98–4296 VRW, C 98–4360 VRW, C 98–4536 VRW, C 98–4603 VRW, C 98–4673 VRW, C 98–4757 VRW.

United States District Court,
N.D. California,
San Francisco Division.

Sept. 3, 1999.

Jacob A. Goldberg, Berger & Montague, P.C., Philadelphia, PA, James J. Seirmarco, Abbey, Gardy & Squitieri, Robert C. Schubert, Juden Justice Reed, Schubert & Reed LLP, San Francisco, CA, Lee Squitieri, Stephen J. Fearon, Jr., Abbey, Gardy & Squitieri, Jules Brody, Stull Stull & Brody, Joseph H. Weiss, Weiss & Yourman, New York City, Peter H. Rachman, Goodkind Labaton Rudoff & Sucharow LLP, Ft. Lauderdale, FL, Thomas G. Shapiro, Shapiro Haber & Urmy LLP, Boston, MA, Kevin J. Yourman, James E. Tullman, Elizabeth P. Lin, Behram V. Parekh, Weiss & Yourman, Los Angeles, CA, Michael D. Braun, Stull Stull & Brody, Los Angeles, CA, for plaintiffs.

Boris Feldman, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for defendants.

WALKER, District Judge.

The above are seven related securities class actions filed against Cylink Corporation and certain of its officers and directors. The plaintiffs in each of these actions allege violations of the Securities Exchange Act of 1934 and SEC Rule 10b–5, 15 U.S.C. § 78j(b), 17 CFR § 240.10b–5. The purported class consists of purchasers of Cylink common stock during various class periods. Some of the named plaintiffs in the seven cases along with two purported class members who have not filed complaints seek as a group to be designated lead plaintiffs (Cylink Shareholder Group) pursuant to section 21D(a)(3)(B), the lead plaintiff provisions of the Private Securities Litigation Reform Act amend-

ments to the Exchange Act. The Cylink Shareholder Group seek to appoint a consortium of law firms to serve as co-lead counsel for the class. Confronted with this multi-party bid for designation, the court addresses the following issues: provisional certification of lead plaintiff(s), provisional class certification, appointment of class counsel and consolidation.

## I

As a preliminary matter, the court must consider whether notice was adequate under the PSLRA notice provisions. The undersigned addressed this issue extensively in *Ravens v. Iftikar*, 174 F.R.D. 651 (N.D.Cal.1997). Notice adequate under the PSLRA must "identify the claims alleged in the lawsuit and the purported class period and inform potential class members" of their right to intervene in the litigation. House Conf. Rep. No. 104–369, 1995 U.S.C.C.A.N. at 732. Furthermore, the description of the claims in the notice must be congruent with the claims as alleged in the pleadings. See *Ravens,* at 656–661.

If, for example, the complaint alleges a uniform inflation in the price of the security throughout the class period due to a single misstatement or misleading omission, then a notice which described the alleged misstatement or omission and set forth the dates of the class period would probably suffice under the PSLRA. Few securities class action complaints are so limited. Typically, the pleadings allege multiple misstatements or omissions each of which allegedly affects the trading price of the security. In such an case, the differing effects of each misstatement or omission must be set forth in the notice.

This requirement stems from the different and conflicting interests of the class with respect to the evidence in the litigation and possible settlement strategies.[1] That evidence may well be subject to different interpretations, each of which would generate a different degree of price inflation. Because the fraud-on-the-market theory of liability upon which securities class actions are predicated collapses liability and damages into one inquiry, see *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), a class member who purchased at a time when one misstatement or omission affected the price of the security may well have interests antagonistic to a class member who purchased at another time during the class period. See *Ravens* at 671–675.

The defendants at bar contend that the notices here are inadequate. Plaintiffs respond that defendants lack standing to raise this issue, citing language of the PSLRA that states that a challenge to the adequacy of the putatively "most adequate plaintiff" shall be made "only upon proof of a member of the purported class." 15 U.S.C. § 78u–4(a)(3)(iii)(II). This provision does not foreclose a challenge by defendants to the adequacy of the notice, only to the selection of the most adequate lead plaintiff.

Adequacy of the notice, after all, is not a matter of concern only to class members. Defendants also have an interest in adequate notice.

Defendants' interest in an adequate notice stems from the relationship between the notice and the class period which the notice defines. That relationship can affect defendants' interests in at least two possible ways. One possibility is that some class members may seek to lengthen or shorten the class period in order, respectively, to maximize the overall exposure of defendants or the individual recoveries of certain class members. Defendants may find this serves or disserves their interests as it produces a corresponding reduction in overall liability. Another possibility is that some plaintiffs may seek to lengthen the class period, a position that defendants may find serves their interests because it maximizes the release which defendants may obtain through settlement or judgment. The class period most advantageous to defendants is closely tied to the peculiar facts of each case. In one case, the

---

1. The overwhelming majority of securities class actions are settled. See Joseph A Grundfest and Michael A. Perino, *Ten Things We Know and Ten Things We Don't Know About the Private Securi-* *ties Litigation Reform Act of 1995,* 1015 PLI/Corp 1015, 1027 (1997) (quoting a study finding a settlement rate of 87.6% for actions filed from April 1988 through September 1996).

**580**

class period most advantageous to defendants may be a lengthy one or it may be a short one or it may one that includes or excludes a time when a certain event occurred. A notice that alerts potential claimants to their claims may, therefore, be in defendants' interests. Similarly, and counter-intuitive as it may seem, a notice which lulls certain troublesome potential claimants into inaction may be in the interests of the purported lead plaintiffs at bar, their counsel, or both.

The point is that excluding defendants from the discussion of what notice is adequate would not serve to bring to light the range of considerations the court should have in view when deciding upon notice. To be sure, defendants' interest is a self-interested one, but so of course is that of plaintiffs. The court therefore rejects plaintiffs' suggestion that the defendants at bar lack standing to comment on the adequacy of PSLRA notice.

Furthermore, certain class members may remain shareholders and this holding forms their larger interest in the controversy at bar, outweighing their interest in a potential recovery. Given adequate notice, therefore, such class members may actually express support for defendants' position in the litigation. Inadequate notice makes this less likely. For this reason, too, defendants have an interest in notice which will bring forth any such class members. In any event, whether defendants have "standing" to challenge notice or not, the court bears an obligation to ensure that the "best notice practicable" be given to the class and must, therefore, scrutinize the notice with care. See F.R.C.P. 23(c)(2).

Turning to the section 78u–4(a)(3) notices in this litigation, nine law firms "published" such notices over the Internet.[2] See Nikkho Decl. Exs. 4–60. All but one or perhaps two of these notices appear inadequate under the standards articulated in *Ravens.* The notice

of Goodkind, Labaton, Rudoff & Sucharow, for example, states:

> Plaintiff alleges, inter alia, that documents disseminated during the Class Period relating to the Company's results for its 1998 first and second fiscal quarters deceived the investing public concerning the Company's revenues and earnings for those periods.
>
> Certain officers of the Company, including at least one of the defendants, took advantage of [a] resulting inflated market price of the Company's stock to sell large blocks of Cylink stock for substantial proceeds.

Nikkho Decl. Ex. 6.

Notice by Abbey, Gary & Squitieri, in its entirety, states:

> If you purchased Cylink Corporation stock between April 23, 1998 and November 4, 1998, you may, not later than 60 days from today, move the court to serve as a lead plaintiff of the class action seeking to recover damages on behalf of all similarly-situated purchasers of Cylink Corporation stock, excluding the defendants and their affiliates.

*Id.,* ex. 8.

Similarly uninformative, the notice by Stull, Stull & Brody simply refers to Cylink, sets forth the dates of the class period and states:

> You should be aware that class action complaints involving the securities of the above companies were filed on behalf of investors by the law firm of Stull, Stull & Brody.

*Id.,* ex. 58.

The Wolf Popper notice states:

> The Complaint charges that, throughout the Class Period, the Company and certain of its officers and directors violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by engaging in a scheme to artificially inflate the market

2. Defendants assert that these notices "represent blatant attempts to solicit plaintiffs in hope of winning the lead plaintiff derby." See Def Opp Mem at 5. If the purpose of these notices was to augment the number of class members represented by each firm, the court's limitation on aggregation of plaintiffs to satisfy the "most adequate plaintiff" provisions of the PSLRA addresses that concern. If defendants contend that counsel have engaged in impermissible solicitation, this is not the stage at which that issue can be addressed.

price of Cylink's securities by making misrepresentations and omissions of material fact concerning Cylink's publicly reported revenues, earnings, financial condition and growth prospects.

*Id.*, ex. 11.

Milberg Weiss's dragnet notice stands out as particularly deficient. It lists eight issuers of securities and class periods and then states:

> You should be aware that class action complaints involving the securities of the above companies were filed on behalf of investors by the law firm of Milberg, Weiss, Berhsad, Hynes & Lerach LLP ("Milberg Weiss"), often in cooperation with other major experienced securities law firms.
>
> If you wish to discuss these cases or have any questions concerning these cases or your rights or interests, please contact: William S. Lerach, Alan Schulman or Darren J. Robbins of Milberg Weiss/California at 800/449–4900 or via e-mail at wsl@mwbhl.com.

*Id.*, ex. 17. Such a notice provides no substantive information to investors.

Schubert & Reed's notice, after announcing a class period of 4/24/98 through 11/4/98, states:

> On November 5, 1998, following consultation with its outside auditors, Cylink announced that its first and second quarters of fiscal 1998 were materially overstated and that the company will report substantial operating losses for each of the first three quarters of 1998. On November 4, 1998, the company replaced President and CEO Fernand Sarrat, Vice President of Sales and Marketing Tom Butler, and John Daws, former CFO and Vice President of Business Development. On news of the accounting improprieties and management purge, Cylink's stock price fell from a close of $4–7/16 on Tuesday, November 3, 1998, to $3–11/16 on November

5, 1998, losing 17% of its value in two days' trading.

*Id.*, ex. 7.

Somewhat better but still inadequate, Shapiro, Haber, & Urmy's notice provides:

> The case was filed on behalf of all persons who purchased Cylink common stock between April 24, 1998 and November 4, 1998 (the "Class Period"). The complaint alleges that Cylink, which develops, markets and supports computer network security products, and certain of its officers and directors, disseminated materially false and misleading statements concerning its financial results for the first two quarters of fiscal 1998. In addition, they failed to disclose material adverse information about the Company's business during the Class Period. These actions caused the price of the stock to be artificially inflated and certain officers and directors sold large amounts of their stock at the inflated price. After Cylink announced a senior management shake-up and that its financial results had been overstated, the price of its stock fell 17% in just two days' trading.

*Id.*, ex. 40. This notice at least makes an effort at describing the nature of the claims asserted. It fails, however, to disclose the misstatements or omissions claimed and the periods when these misstatements or omissions affected the trading price of Cylink.

Only the notices published by Weiss & Yourman and possibly Berger and Montague pass muster. Weiss & Yourman's November 16, 1998,[3] notice identifies by name and case number the complaint to which it relates, gives the class period and then specifies the three statements that allegedly misled the market:

> The Complaint alleges that Cylink's statements concerning its revenue recognition practices in its Form 10–K, filed with the SEC on or about April 1, 1998, were false and misleading because the Company's accounting practices did not conform with generally accepted accounting principles ("GAAP"). The Complaint also alleges that the Company's press release dated

---

3. Weiss & Yourman also issued notices on November 6, 13 and 30 and December 10 and 22.

None of these notices adequately inform investors of the claims alleged.

April 23, 1998, and its Form 10–Q for the first quarter 1998 (filed with the SEC on or about May 13, 1998) were false and misleading because the reported revenue was overstated by approximately $5 million and the reported net income was materially inaccurate. The Complaint further alleges that the Company's press release dated July 23, 1998, and its Form 10–Q for the second quarter 1998 (filed with the SEC on or about August 12, 1998) were also false and misleading because the reported revenue was overstated by approximately $6.7 million and the reported net income was actually a net loss. *** During the Class Period, no corrective statements were made by the Company.

*Id.*, ex. 4. Although the Weiss & Yourman notice does not specify the times when each of these misstatements distorted the informational mix on Cylink, these periods can more or less be divined from the release dates of the allegedly misleading disclosure documents.

Importantly, the Weiss & Yourman notice contains two disclosures helpful to an investor in considering whether to take action with regard to the litigation. First, the Weiss & Yourman notice points out, "During the Class Period, no corrective statements were made by the company." This informs that the claimed misstatements of the April 1 Form 10–Q, the April 23 press release, the May 13 Form 10–Q, the July 23 press release and the August 12 Form 10–Q were not known to be false until November 5, the end of the class period. In contrast, many securities class action complaints allege that the truth leaked into the market over a period of time interspersed with corrective disclosures. Second, the Weiss & Yourman notice contains a discussion of possible intra-class conflicts:

[A]lthough plaintiff believes that there are no intra-class conflicts based on the pleadings, Judge Walker has previously held that a potential intra-class conflict may exist between (I) those shareholders who purchased and sold their shares completely within the class period, and (ii) those shareholders who purchased their shares during the class period but either sold after the end of the Class Period or continue to hold shares in Cylink. In order to preserve your rights either due to the possible inadequacy of plaintiff or due to a potential intra-class conflict, you may move the Court to serve as a lead plaintiff. If you are a member of the class described above, you may, no later than January 5, 1998, move the Court to serve as lead plaintiff, if you so choose.

*Id.* Alerting class members to such possible conflicts is particularly important in enabling class members to take whatever actions they deem necessary to protect their interests.

Although considerably less informative than the Weiss & Yourman November 16 notice, the December 9 Berger & Montague notice states:

The case is filed on behalf of all persons who purchased Cylink common stock between November 10, 1997, and November 5, 1998 (the "Class Period"). The Complaint alleges that defendants issued false and misleading statements during the Class Period about its reported revenues and earnings as well as the Company's financial controls. Specifically, the Complaint alleges that defendants materially overstated the Company's revenues and earnings for the first two quarters of 1998. In that regard, the Company announced on November 5, 1998, that a preliminary review by independent accountants indicated that the Company's revenues for the first two quarters of 1998, as previously reported, were overstated by approximately $5.0 million and $6.7 million, respectively and that substantial operating losses were expected to be reported for each of the Company's first three quarters of 1998. Additionally, the Complaint alleges that throughout the Class Period defendants failed to disclose the improper nature of its revenue recognition practices.

Cylink stock traded as high as $15–7/8 during the Class Period and closed at $3–11/16 on November 5, 1998. Plaintiff alleges that defendants' misleading statements about the Company's financial results and financial controls artificially inflated the price of Cylink common stock. Plaintiff seeks to recover damages suf-

fered by Class members and is represented by the law firm of Berger & Montague, P.C.

*Id.* at 46. Like the Shapiro Haber notice, the Berger & Montague notice makes an effort to describe the misstatements or omissions alleged. Unlike the Weiss & Yourman November 16 notice, however, the Berger & Montague notice does not set forth the release dates of the allegedly misleading informational disclosures or the particular information releases that allegedly misled the market and makes no effort to inform investors of possible intra-class conflicts.

▮ The basic purpose of the notice requirement of section 78u–4(a)(3)(A), like class action notices generally, is to "present a fair recital of the subject matter of the suit and to inform all class members of their opportunity to be heard." See, e.g., *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1125 (9th Cir.1977). The notice need not and indeed must not contain a mountain of meaningless boilerplate.

▮ Here the Weiss & Yourman November 16 notice includes information regarding the pendency of the action, the claims asserted therein, the proposed class period and the possibility of intra-class conflicts among potential class members who purchased at various intervals throughout the class period. This information is presented in sufficient detail to allow an interested investor considering whether to seek appointment as lead plaintiff to make a rational decision whether to commit the resources necessary to represent the class. Although not each of the law firms seeking to represent a class of Cylink purchasers published an adequate notice, this would appear to be no obstacle to them seeking to serve as class counsel. Section 78u–4(a)(3)(A)(ii) appears to require only that the plaintiff or plaintiffs in the first filed action publish a notice. As Weiss & Yourman filed the first filed case (No. C 98–4292), their notice evidently suffices.

## II

▮ Furthermore, the court finds that consolidation of the actions is appropriate under F.R.C.P. 42(a). "In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F.Supp. 1196, 1211 (S.D.N.Y.1992) (quoting *Lloyd v. Industrial Bio–Test Laboratories, Inc.*, 454 F.Supp. 807, 812 (S.D.N.Y.1978)). Consolidation is generally ordered "so long as any confusion or prejudice does not outweigh efficiency concerns." *Primavera Familienstuftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y.1997).

Each complaint before the court is grounded on the same public filings and the same alleged material misrepresentations and omissions violative of the federal securities laws. Accordingly, pursuant to F.R.C.P. 42(a) and section 27(a)(3)(B) of the Securities and Exchange Act of 1933 the following cases are hereby consolidated:

1. Wenderhold, et al. v. Cylink Corporation et al., CV–98–04292–VRW

2. Lerner, et al. v. Cylink Corporation et al., CV–98–04296–VRW

3. Poling, et al. v. Cylink Corporation et al., CV–98–04360–VRW

4. Silberman, et al. v. Cylink Corporation et al., CV–98–04536–VRW

5. Vassilakos, et al. v. Cylink Corporation et al., CV–98–04603–VRW

6. Von Schweinitz, et al. v. Cylink Corporation et al., CV–98–04673–VRW

7. Plisskin, et al. v. Cylink Corporation et al., CV–98–04757–MHP

Counsel are directed to submit a proposed consolidation order in compliance with the model consolidation order for securities fraud class actions developed by this court. See Commentary, Civ LR 23–1(b).

## III

▮ The court proceeds to consider whether movants may aggregate their claims in support of their bid to be named lead plaintiff. For the reasons stated below, the court finds that aggregation of the proposed plaintiffs would, in this case, be inconsistent with the legislative intent of the PSLRA and

would threaten the interests of the purported class.

In enacting the PSLRA, Congress expressed its belief that lawyers had seized control of class action suits and were bringing frivolous actions on behalf of only nominally interested plaintiffs in the hope of obtaining quick settlements. See Senate Report No. 104–98, 104th Congress, reprinted in 1995 U.S.C.C.A.N. 679, 687–90 (1995). In writing the act, Congress sought to "empower investors so that they, not their lawyers, control securities litigation" by transferring "primary control of private securities litigation from lawyers to investors." *Id.* at 685.

Congress attempted, therefore, "to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." *Id.* at 731; see also H.Rep. No. 104–369 at 32 (1995) reprinted in 1996 U.S.C.C.A.N. 730 (The lead plaintiff provisions are "intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class."). This effort resulted in the reforms embodied in the PSLRA, which among other things amended the Exchange Act to add section 21D, codified at 15 U.S.C. § 78u–4.

Section 21D(a)(3)(B)(I) commands the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(I). The statute imposes a rebuttable presumption that the most capable plaintiff is the class member with the largest financial interest in the relief sought by the class and otherwise "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). This presumption may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most capable plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

Plaintiffs contend that defendants lack standing to oppose their motion to appoint lead plaintiffs. Plaintiffs cite *Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 60 (D.Mass. 1996), which held that the PSLRA limits to other purported class members the right to challenge a proposed lead plaintiff. This issue, however, need not be addressed at this juncture because, regardless whether defendants have standing to object at this stage, the statute requires the court to determine whether the proposed lead plaintiffs are capable of adequately protecting the interests of the class members.

The propriety of aggregation in any given case may be considered by the court independently as part of the appointment process or in connection with a class member's attempt to rebut the lead plaintiff presumption awarded to the largest financial stakeholder. Although the PSLRA provides a specific procedure whereby litigants may attempt to rebut the presumption of most adequate lead plaintiff, the court is nonetheless under a specific obligation to appoint as lead plaintiff the class member or members most capable of adequately representing the interests of the class members. See 15 U.S.C. § 78u–4(3)(B)(I). The court must therefore, independent of any class member's objection, put a proposed aggregation to the test of whether, on its face, it serves the goals and principles of the PSLRA; i.e., whether the group can function as an effective monitor of class counsel's performance.

Although the PSLRA expressly permits the appointment of more than one lead plaintiff, courts have discretion to reject motions for the appointment of group lead plaintiffs if such an appointment would contravene the aims of the PSLRA. The courts that have considered whether multiple plaintiffs may aggregate to form a group of plaintiffs possessing the "largest financial interest in the relief sought by the class" and thus gain the presumption of section 78u–4(a)(3)(B)(iii)(I), however, have not come to uniform conclusions.

In *In re Donnkenny, Inc*, the court considered a proposal to appoint as lead plaintiffs two unrelated institutional investors and four other individual class members. See 171 F.R.D. 156, 157 (1997). The court held that such aggregation would defeat the purposes of the PSLRA because it would merely serve to dilute the interests of each lead plaintiff and "allow and encourage lawyers to direct the litigation." *Id.* at 157–58. The SEC, however, while taking the position that courts should not appoint competing applicants for the lead plaintiff position as co-lead plaintiffs, has nonetheless approved of the appointment of a single "group" or aggregate plaintiff. See October 30, 1998 Commission Announcement, 1998 WL 755118. And, many courts have approved of both aggregation and the appointment of co-lead plaintiffs.

In *In re Ride, Inc*, the court allowed aggregation for the purpose of obtaining the most adequate plaintiff presumption, citing the language of the statute referring to the most capable plaintiff as a "person or group of persons." C–97–402WD, slip op. at 3 (W.D.Wash. Aug. 5, 1997) ("On its face, this language calls for aggregation.") (quoting § 78u–4(a)(3)(B)(iii)(I)). Similarly, the court in *In re Read–Rite* held that "[a]lthough the plain language of the Act does not expressly allow or prohibit such a pooling of shares, nothing in the text prevents the aggregation of shares by the Proposed Lead Plaintiffs to constitute the largest financial interest." C–97–20059 RMW, slip op. at 4 (N.D.Cal. May 27, 1997). And, in *D'Hondt v. Digi Int'l*, the court seemed to abandon the prospect of limiting the scope of aggregation. See 1997 WL 405668, *3 (D.Minn.); but see October 29, 1998, SEC Litigation Release, 1998 WL 751412 (advocating a limitation on the number of members of a group lead plaintiff).

In *In re Oxford Health Plans, Inc.*, the court considered various motions seeking lead plaintiff status including those made on behalf of a state employee pension fund (ColPERA), a diversified open-end fund management company (PBHG) and a group consisting of 35 individual plaintiffs and entities (Vogel). See 182 F.R.D. 42 (S.D.N.Y.1998). ColPERA had allegedly suffered the largest financial loss, followed by the Vogel plaintiffs and then PBHG. See *id.* at 44. The court concluded that the interests of the proposed class would best be served by the appointment of three co-lead plaintiffs consisting of ColPERA, PBHG and an aggregation of three of the individual members of the Vogel group, each exercising a single vote. See *id.* at 45.

In so doing, the court stated,

The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest interest was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions. Allowing for diverse representation, including in this case a state pension fund, significant individual investors and a large institutional investor, ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants.

*Id.* at 49. The court specifically noted that while the legislative history of the PSLRA suggests a preference for institutional investors, ColPERA's primary fiduciary obligation to its pensioners limited its ability to function as a fiduciary to the class as a whole. See *id.* at 46–47. This and other factors limiting the adequacy of the individual plaintiffs led the court to conclude that the aggregation of a portion of the Vogel plaintiffs and the appointment of three co-lead plaintiffs, each with separate counsel, was necessary.

In addition to these courts, numerous others have allowed aggregation or appointed co-lead plaintiffs, often with little or no discussion. See, e.g., *Switzenbaum v. Orbital*, 187 F.R.D. 246, 248–251 (E.D.Va.); *In re Olsten Corp.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998); *In re Cendant*, 182 F.R.D. 144, 148–49 (D.N.J.1998); *In re Milestone Scientific*, 183 F.R.D. 404, 416–419 (D.N.J.1998); *Chill v. Green Tree Financial*, 181 F.R.D. 398, 408–13 (D.Minn.1998); *Lax v. First Merchants Acceptance Corporation*, 1997 WL 461036, *5 (N.D.Ill.); *Gluck v. CellStar Corp.*, 976

F.Supp. 542, 545–546, 549–50 (N.D.Tex.1997); *Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 64 (D.Mass.1996); *In re Cephalon,* 1996 WL 515203, *1 (E.D.Pa.).

The undersigned believes that a middle course best serves the class and comports with the PSLRA. Aggregation solely for the purpose of creating a group that would have the "largest financial interest in the relief sought by the class" would seem to contravene the PSLRA's purpose of shifting control of the litigation from the lawyers to the investors. Uncritical or blanket acceptance of such aggregation would permit lawyers to designate unrelated plaintiffs as a group which would allow and encourage lawyers to direct the litigation. See *Donnkenny,* 171 F.R.D. at 158. There are two circumstances, however, in which aggregation should be permitted.

■ The first instance occurs if aggregation is necessary to address the existence of intra-class periods. If there is no single proposed plaintiff who has purchased in each intra-class period, a proposed plaintiff in one intra-class period may join with a class member or members who purchased in the other intra-class period(s) to form a group that would be entitled to the statutory presumption of superiority. Were aggregation not allowed in such an instance, the court would be forced to appoint as lead plaintiff an individual plaintiff whose limited interest in the litigation renders him incapable of fairly and adequately protecting the interests of the class as a whole. Thus, representational concerns may mandate aggregation.

■ The second instance concerns the question of adequate litigant control over the litigation. Aggregation may be permissible if it can be shown to serve the PSLRA's effort to shift control of the litigation away from the lawyers and to the investors. This might be true if the aggregation could be shown to be more capable than any single plaintiff of exercising effective control over the litigation independent of the lawyers. Likewise, if appointment of co-lead plaintiffs is necessary to achieve the transfer of power away from attorneys and to litigants, such appointment may be appropriate. See *In re Oxford,* 182 F.R.D. at 45–47. None of these

circumstances, however, accurately describes the situation before the court.

According to movants, the consolidated amended complaint will allege that Cylink's common stock was inflated throughout the period beginning February 13, 1998 and ending November 4, 1998. The period alleged by movants, however, is not alleged to contain uniform price inflation. Specifically, movant's expert calculates an inflation rate of 30.9% during the period between February 13 and September 14, 1998, versus 13.8% during the period between September 15 and November 4, 1998. Plaintiff's Statement, Ex. A at 6. Hence, a most adequate lead plaintiff must be one that purchased during both periods of alleged inflation or a group of purchasers at least one of which purchased in each of the periods of alleged inflation.

Of the seven proposed lead plaintiffs, only two, Jonny Alpern and Roland Mayer, purchased in both the first and the second period of alleged wrongful inflation. In order to have a facially representative lead plaintiff, therefore, at least one of these two plaintiffs must serve as either lead plaintiff or co-lead plaintiff. Alpern alone, however, purchased more than twice the number of shares purchased by all the other proposed lead plaintiffs combined in the first period and twenty per cent more shares than Mayer in the second period. See Decl. of James Jay Seirmaco in Support of Plaintiffs' Motion to Consolidate (Doc. 15), Ex. 11.

Thus, the additional plaintiffs do not increase representation by covering distinct intervals within the class period that could not be represented by an individual plaintiff. Likewise, the additional plaintiffs do not contribute a significant level of financial interest. And finally, they do not purport to possess any unique expertise that would enable them to monitor class counsel more effectively. The aggregation of these plaintiffs would not advance the aims of the PSLRA and, to the contrary, would merely serve to dilute the ability of the party with the largest financial interest, Alpern, to maintain control over the litigation. Aggregation of the proposed lead plaintiffs' claims would, under these circumstances, contravene the purposes of the

PSLRA. The proposed lead plaintiffs are therefore not entitled to aggregate their claims in order to obtain the presumption of most adequate plaintiff.

Alpern, however, individually satisfies both the typicality and the adequacy requirements of F.R.C.P. 23 to the degree required by the PSLRA. At this stage of the proceedings, nothing more than a preliminary showing is required. See *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 546 (N.D.Tex.1997). If successful in proving his losses, Alpern will necessarily prove the conduct which underlies the claims of all purported plaintiffs and each of the elements of those claims. Accordingly, Alpern's claims are sufficiently typical of those advanced by the purported class members.

Alpern also has a significant financial interest in the litigation. He purchased 32,000 shares in the relevant time period for a total of $337,625. Under movant's analysis this resulted in approximately $95,442 in inflationary damages. Even if this sum is relatively small in proportion to the total claims of potential class members, it is certainly large enough to ensure Alpern's interest in the litigation.

Finally, Alpern has certified that he has reviewed the complaint and authorized its filing and that he is willing to serve as a representative party on behalf of the class and will testify if necessary. The court therefore adopts the presumption that Alpern is the most adequate plaintiff pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

Nothing in movants' papers rebuts this presumption. As explained above, the appointment of a multi-party lead plaintiff would not, in this case, do anything to advance the aims of the PSLRA or otherwise protect the interests of class members. There appears to be no basis for a finding of inadequacy on the part of Alpern. Accordingly, Jonny Alpern is appointed lead plaintiff. The court, however, hereby provides thirty days from the date of this order to any other plaintiff, person or entity to come forward and rebut this presumptive designation based on the ground of divergent interest, inadequate financial stake or any other substantial showing as outlined by the statute.

IV

As a general matter, the lead plaintiff selects lead counsel to represent the class subject to the court's approval. See 15 U.S.C. § 78u–4(a)(3)(B)(v). The court, however, is charged with ensuring that the class receives quality representation at a fair price and cannot, therefore, simply defer to lead plaintiff's choice of counsel. Lead plaintiff, as an individual, almost certainly does not have the expertise and resources of a large institutional investor. His ability to select and monitor the conduct of class counsel on behalf of the entire class throughout the duration of this litigation is, therefore, inherently less than that of the ideal lead plaintiff contemplated by Congress.

 The court, mindful of this fact, together with the inherent conflicts and agency problems in class actions and the limited ability of the court to address such problems through case management, concludes that determination of lead counsel through a competitive bidding process is necessary to protect the interests of the putative class members. See *In re Cendant Corp. Litigation*, 182 F.R.D. 144, 150–52 (D.N.J.1998). In addition, it is the court's belief that a "percentage of recovery fee" calculation holds the best promise of harmonizing the interests of the class and its future counsel.

Accordingly, a sealed-bid auction will be held as follows. Any lawyer or law firm that seeks to be designated class counsel for claims against one or more defendants shall submit its proposal for such representation in the clerk's office on or before 4:30 pm, September 30, 1999, and shall file the bid ex parte, under seal. Joint proposals will not be considered. Lead counsel will, however, be allowed to spread its risk by farming out tasks in its prosecution of its case. The submitted proposals shall identify each defendant from which recovery is sought and set forth:

(1) the firm's experience in securities class action litigation and the background and experience of those lawyers in the firm who, it is anticipated, will be engaged in representing the class in the present litigation, includ-

ing the terms and fee arrangements under which such representation took place;

(2) the bona fide qualifications of the firm to complete the work necessary for representation of the class, including the willingness of the firm to post a completion bond or other security for the faithful completion of its services to the class, and the terms of any such bond or security;

(3) the firm's insurance coverage for malpractice;

(4) evidence that the firm has evaluated the case, including specifically the range and probability of recovery;

(5) the percentage of any recovery the firm will charge in the event of a recovery as fees and costs for all work performed in connection with the case set forth on the Fee Schedule Grid, affixed as Appendix A below. This shall include an explanation of the percentage fee arrangement involving a straight, increasing or decreasing fee percentage based on the overall amount of recovery through monetary increments and/or stage of recovery at which litigation is reached;

(6) a certification on behalf of the firm that (a) its proposal was prepared independently of any other firm, entity or person not affiliated with the firm, (b) no part of the proposal was disclosed to anyone outside the firm prior to filing with the court and (c) the proposal was prepared without direct or indirect consultation with other firms that have filed actions on behalf of the proposed class in this matter, or entered an appearance in any fashion.

The court notes that counsel located within this district will not necessarily receive more favorable consideration simply because of their location. This order in no way prevents any individual member of the putative class who opts out of the class from hiring the attorney of his or her choice in this matter.

The court hereby provisionally certifies a class of plaintiffs who purchased Cylink Stock between February 13, 1998 and November 4, 1998, and provisionally designates Jonny Alpern as lead plaintiff. This certification does not constitute a final class certification. Once lead plaintiff's counsel is appointed, a renewed motion for class certification and any opposition will be considered.

IT IS SO ORDERED.

### APPENDIX A—FEE BID SCHEDULE

Application for Lead Counsel

Fees as Percentage (%) of Total Class Recovery

| | From Pleading Through Motion to Dismiss | After Motion to Dismiss Through Adjudication of Summary Judgment | After Adjudication of Summary Judgment Motions Through Trial Verdict | After Trial Verdict Through Final Appellate Determination |
|---|---|---|---|---|
| First $500,000 | | | | |
| $500,001– $1,000,000 | | | | |
| $1,000,001– $5,000,000 | | | | |
| $5,000,001– $10,000,000 | | | | |
| $10,000,001– $15,000,000 | | | | |
| $15,000,001– $20,000,000 | | | | |
| Over $20,000,000 | | | | |